IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DANIEL C. FLINT et.al.,<br><br>    Plaintiff,<br><br>  v.<br><br>ALLY FINANCIAL INC., et.al.,<br><br>    Defendants. | No. 3:19-cv-00189-FDW-DCK |

**DEFENDANT ALLY FINANCIAL INC.'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO STRIKE CLASS ALLEGATIONS**

Defendant Ally Financial Inc. ("Ally"), by counsel, submits its Memorandum in Support of its Motion to Strike Class Allegations ("Motion") pursuant to Fed. R. Civ. P. 23(c)(1) and 23(d)(1)(D) against the First Amended Complaint ("Complaint") filed by Plaintiff Daniel C. Flint ("Plaintiff"). For the reasons set forth below, Ally's Motion should be granted, and the Court should strike the Complaint's class allegations.

**INTRODUCTION**

Ally files this Motion, together with its Motion to Dismiss, to strike the Complaint's class allegations. Plaintiff asserts fifteen separate vague and conclusory claims against Ally, including ten separate class claims. However, as shown in Ally's Motion to Dismiss, no count sets forth a plausible claim for relief against Ally, as among other reasons, the claims are based on the conduct of Defendants UAR National Services, LLC and/or Associates Asset Recovery, LLC (collectively, the "Repossession Defendants"), not Ally. Further, as discussed below, individual issues outweigh any issues that may be in common to the purported class and an inherent conflict exists between Plaintiff's proposed role as class representative and his proposed role as lead class counsel. In particular, because of his recent felony conviction, Plaintiff cannot fairly and adequately protect

1

Case 3:19-cv-00189-FDW-DCK   Document 18-1   Filed 07/22/19   Page 1 of 14

the interests of the class, even if Plaintiff did not have the inherent conflict of purporting to also serve as counsel for the class despite a suspended license to practice law.

Plaintiff's claims primarily arise from two events following his default on his auto finance contract: (1) Repossession Defendants allegedly trespassed into Plaintiff's apartment parking garage to repossess his 2013 Chevy Camaro (the "Vehicle"); and (2) after tendering the full default redemption amount, Plaintiff alleges Repossession Defendants refused to release his vehicle until he signed documents, including a release and hold harmless clause (the "Release"). Based on Plaintiff's individual repossession and subsequent interaction with the Repossession Defendants, specific only to him, Plaintiff alleges class Counts number: (6) Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing; (7) Unfair and Deceptive Acts and Practices; (8) Fraudulent Inducement; (9) Fraudulent Misrepresentation; (10) Negligent Misrepresentation; (11) Violation of N.C. Gen. Stat. §§ 75-50, *et seq*.; (12)Violation of Federal Fair Debt Collection Practices Act; (13) Negligence Per Se; (14) Breach of Quasi Contract; and (15) Conspiracy.

In this Motion, Ally moves to strike the Complaint's class allegations because Plaintiff's claims necessarily require extensive individualized fact inquiry into the circumstances of each purported class members' repossession and subsequent recovery of their vehicle nationally, including, but not limited to, the specific conversations between the individual and employees of Repossession Defendants. Ally also moves to strike the Complaint's class allegations because an inherent conflict exists between Plaintiff's proposed role as class representative and his proposed role as lead class counsel. In particular, Ally moves to strike the Complaint's class allegations because Plaintiff cannot serve as lead class counsel because his license to practice law has been suspended in Michigan and he is presently involved in litigation regarding his law license with the North Carolina State Bar, due to a felony conviction in California. No amount of discovery will

cure these fundamental defects. Accordingly, the Court should strike Plaintiff's class allegations, Counts 6 through 15, thereby saving the parties and the Court significant time and resources that would otherwise be expended in meritless discovery intended to harass the Defendants into settlement.[1]

## RELEVANT FACTUAL BACKGROUND

On or about August 11, 2018, an employee of Repossession Defendants repossessed the Vehicle.[2] (Compl. ¶¶ 10-11.) Plaintiff alleges the Vehicle was located in his apartment's gated parking garage, to which the general public does not have access, and which requires a remote to open. (*Id.* ¶ 15.) After Plaintiff paid the quoted redemption amount to cure his default, Plaintiff was provided directions to recover the Vehicle. (*Id.* ¶ 17.)

Upon arriving to redeem his vehicle, Plaintiff was purportedly required to sign documents, including the Release. Plaintiff alleges he objected to signing the Release and was not informed he would be required to sign the Release before tendering his default redemption payment. (Compl. ¶ 19.) Plaintiff further alleges Repossession Companies refused to release the Vehicle until he signed the documents, including the Release.[3] (*Id.* ¶¶ 20-21.)

Based on these allegations, and with noted exclusions, Plaintiff proposes the following Class Definition:

---

[1] Plaintiff has already made these intentions known, most recently through a letter evidencing his intent to seek electronically stored information from Defendants in native file format "spanning the previous ten years." A true and accurate copy of Plaintiff's July 9, 2019 letter is attached as **Exhibit A**.

[2] Ally disputes the allegations plead, but for the purposes of this Motion only, Plaintiff's factual allegations are presumed to be true.

[3] Plaintiff raises allegations against Ally based on purportedly harassing phone calls and miscellaneous fees. (*See* Compl. ¶¶ 53(g)-(i), 85, 88.) However, these allegations are merely legal conclusions lacking any factually plead support, as confirmed by Plaintiff's failure to mention a single fact related to these allegations in the Complaint's fact section. These claims are addressed in Ally's Motion to Dismiss filed contemporaneously with this Motion.

> All persons or throughout the United States and its territories who, during the class period, entered into a secured agreement with Ally Financial and were either:
> a. Required to waive their legal rights in order to redeem their repossessed vehicle, despite paying the redemption price in full;
> b. Subjected to an unreasonable amount of phone calls in connection with the collection of the debts owed to Ally Financial; or
> c. Received a bill from Ally Financial that included charges for some unidentified reason, such as "Miscellaneous," "Other Charges" or some similar language.

(*Id*. ¶ 112.) Further, Plaintiff seeks to appoint himself the class representative, as well as lead counsel for the proposed class. (*Id*., Request for Relief ¶ 1.)

## LEGAL STANDARD

As an initial matter, the early junction of the case does not prevent the Court from ruling on Ally's Motion. *See Cornette v. Jenny Garton Ins. Agency, Inc.*, No. 2:10-CV-60, 2010 U.S. Dist. LEXIS 52809, at *4 (N.D. W.Va. May 27, 2010) ("According to Rule 23(c)(1)(A), a court must determine whether class certification is proper '[a]t an early practicable time after a person sues or is sued as a class representative.'"); *Audio-Video World of Wilmington, Inc. v. Mhi Hotels Two, Inc.*, No. 7:09-CV-00039-F, 2010 U.S. Dist. LEXIS 142156, at *12 (E.D.N.C. Dec. 8, 2010) ("A court must determine whether to certify an action as a class action at an 'early practicable time.'"). A court may strike class allegations before a motion for class certification when the complaint itself demonstrates that the requirements for maintaining a class action cannot be met. *Cornette*, 2010 U.S. Dist. LEXIS 52809, at *4 ("Where the inability to maintain the suit as a class action is apparent from the face of the complaint, a court may dismiss the class allegations on the pleadings.").

"Rule 23(d)(1)(D) provides that, '[i]n conducting an action under this rule, the court may issue orders that ... require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly.'" *Johnson v. Flakeboard Am. Ltd.*, No. 4:11-2607-TLW-KDW, 2012 U.S. Dist. LEXIS 83702, at *12 (D.S.C. Mar. 26,

4

2012) (quoting *Wright v. Family Dollar, Inc.*, No. 10 C 4410, 2010 U.S. Dist. LEXIS 126643, 2010 WL 4962838, at *1 (N.D. Ill. Nov. 30, 2010)).

> After a determination has been made that a class action is not proper under Rule 23(c)(1), courts typically issue an order requiring that the pleadings be amended to reflect that decision[.] While the issuance of such an order is often done without reference to Rule 23(d)(1)(D), this rule provides courts with the authority to mandate the amendment of the pleadings. In short, Rule 23(d)(1)(D) can be used to remove class allegations from a complaint after the class certification issue has be properly presented and determined by a court.

*Id.*, at *13 (quoting *Boatwright v. Walgreen Co.*, No. 10 C 3902, 2011 U.S. Dist. LEXIS 22102, 2011 WL 843898, at *2 (N.D. Ill. Mar. 4, 2011)).

## ARGUMENT

Applying the above standards, it is evident from the allegations in the Complaint that Plaintiff cannot certify his proposed class because individualized issues predominate the purported claims. Further, an inherent conflict exists between Plaintiff's proposed role as class representative and his proposed role as lead class counsel. More specifically, Plaintiff cannot serve as lead class counsel because his license to practice law has been suspended in Michigan and he is presently involved in litigation regarding his law license with the North Carolina State Bar, due to a felony conviction in California.

**I. THE COMPLAINT CLEARLY ESTABLISHES THAT PLAINTIFF WILL BE UNABLE TO SATISFY THE REQUIREMENTS OF RULE 23(a).**

In order to certify a class, a plaintiff "must satisfy each of Rule 23(a)'s four requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation." *Johnson*, 2012 U.S. Dist. LEXIS 83702, at *13 (citing Fed. R. Civ. P. 23(a)). "If any of these requirements cannot be satisfied, class certification is inappropriate." *Id.* "The typicality and commonality requirements of the Federal Rules ensure that only those plaintiffs or defendants who can advance the same factual and legal arguments may be grouped together as a class." *Avalon Ctr. Inv. Co. v.*

*Commercial Defeasance, LLC*, No. 3:08-cv-00535-W, 2010 U.S. Dist. LEXIS 65239, at *12 (W.D.N.C. May 20, 2010) (quoting *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998)). These requirements combine to "serv[e] as guideposts for determining whether maintenance of a class action is economical and whether the named plaintiffs' claims and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* (internal alternations and quotations omitted) (citing *Broussard*, 155 F.3d at 340).

The presence of a "myriad of variations of each plaintiff's situation defeats commonality." *Rose v. SLM Fin. Corp.*, 254 F.R.D. 269, 272 (W.D.N.C. 2008). Further, "[a] question is not common, … if its resolution 'turns on consideration of the individual circumstances of each class member.'" *Id.* (citation omitted) ("It is difficult to conceive that the Court might analyze the specifics of [plaintiff's] transactions in evaluating his claims for unfair and deceptive trade practices, breach of good faith and fair dealing and breach of contract, and make a ruling applicable to a class of hundreds."). Additionally, "[t]ypicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Id.* (citing *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998)).

Here, it is clear from the Complaint that Plaintiff's class claims necessarily involve individualized inquiries of fact and, therefore, as a matter of law Plaintiff cannot set forth a certifiable class. As such, the Court should strike Plaintiff's class allegations.

### A. <u>Plaintiff's Claims Based on the Repossession and Subsequent Recovery of the Vehicle Necessarily Involve Individualized Issues.</u>

Plaintiff's class claims are primarily based on the repossession by, and subsequent recovery from, Repossession Defendants, including the vast majority of allegations raised in Plaintiff's class

claims, Counts 6 through 15. While based on different legal theories, in each instance Plaintiff alleges Ally is liable to Plaintiff and the proposed class because the Repossession Defendants purportedly refused to release the Vehicle until Plaintiff agreed to sign a waiver, despite Plaintiff tendering a redemption payment. (*See, e.g.,* Compl. ¶¶ 46 ("Defendants violated their duty of good faith and fair dealing by failing to disclose to Plaintiff and the proposed class that they would be required to sign a release and hold harmless clause before their vehicle would be released, even though the redemption price had been paid in full."); 84 ("Defendants violated Section 75-51 of the NCDCA by threating to keep Plaintiff and the proposed class' vehicle, unless they agreed to sign the waiver.").) Plaintiff alleges this was a material misrepresentation. (*See, e.g.,* Compl. ¶ 59 ("Defendants falsely represented the fact that Plaintiff and the proposed class were required to sign a waiver of their legal rights in order to redeem their vehicle, despite the fact that the redemption price was paid in full.").)

Based on these allegations, Plaintiff proposes to include in his nationwide class those individuals who were "[r]equired to waive their legal rights in order to redeem their repossessed vehicle, despite paying the redemption price in full[.]" (Compl. ¶ 112.).

However, Plaintiff overlooks the individualized nature of his allegations which is clear from the very Class Definition proposed. As an initial matter, the Complaint acknowledges the myriad of varying state consumer protection statutes at issue.[4] (*See* Compl. ¶ 52 (advancing Plaintiff's four purposed sub-classes based on the varying state statutes).) Further, Plaintiff concedes "that many of these state statutes prohibit unfair or deceptive trade practices generally, with the intent that the Court be guided by the interpretations given by the Federal Trade

---

[4] Plaintiff also acknowledges the individualized statutes at issue by carving out two proposed exclusions from the Class Definition based on specific state's consumer protection statutes. (*See* Compl. ¶ 114.)

Commission and the federal courts to Section 5(a)(1) of the Federal Trade Commission Act." (*Id*. ¶ 52(a)(i).) However, this necessarily involves an individualized inquiry into the jurisdiction specific applications and case law.

Furthermore, Plaintiff's request to represent a nationwide class should be denied, not only because the class claims will necessarily involve individualized inquiries into the applicable laws, but also because the proposed nationwide class involves individualized issues related to the geography of witnesses, relevant documents, and burdens of proof. Moreover, in order to determine if the claims are common or typical to the proposed class, each individual interaction would require a particularized evaluation to determine a multitude of specific events. These include, but are not limited to: (1) what an individual was told prior to tendering their redemption payment; (2) whether an individual initially refused to sign the redemption paperwork and Release; (3) whether the Repossession Defendants thereafter insisted that the individual sign the Release; (4) whether, after refusal to sign the Release, the Repossession Defendants thereafter refused to allow the individual to recover their vehicle; and (5) whether the individual subsequently signed the release. Whether or not these events occurred would greatly alter the potential liability and defenses of the parties thereby necessitating an individualized inquiry for each potential class member.

To the extent Plaintiff's allegations occurred as plead, which Ally disputes, they are specific only to him, and Plaintiff's attempt to proceed on behalf of a proposed class is wholly inappropriate. As a determination of claims and defenses, as well as the law at issue, would necessarily involve an individualized inquiry for each potential class member, Plaintiff's class claims fail as a matter of law and Ally's Motion should be granted.

8
Case 3:19-cv-00189-FDW-DCK   Document 18-1   Filed 07/22/19   Page 8 of 14

### B. Plaintiff's Remaining Class Claims Also Necessarily Involve Individualized Issues.

As set forth in Ally's Memorandum in Support of it Motion to Dismiss, Plaintiff's claims based on Ally's purported conduct (Counts 7, 11, 12 and 15) are mere legal conclusions lacking factually plead support. (*See* Compl. ¶¶ 53(g) ("Continuing to harass the consumer by calling the consumer's phone an unreasonable number of times every day[.]"); 53(h) ("Causing a probability of confusion or of misunderstanding as to the legal rights of the consumer[.]"); 53(i) ("Charging additional fees on the consumer's bill and listing them as "Miscellaneous" – i.e. failing to identify why the consumer is being charged these additional fees."); 85 ("Defendants violated Section 75-52 of the NCDCA by 'causing a telephone to ring or engaging any person in telephone conversation with such frequency as to be unreasonable or to constitute a harassment to the person under the circumstances."); 88 ("Defendant Ally Financial violated 15 U.S.C. 1692 Section 806(5) by causing Plaintiff and the proposed classes' telephone to ring repeatedly or continuously with the intent to annoy, abuse, or harass any person at the called number."); 101 ("Defendants agreed and/or combined to engage in a civil conspiracy to commit the unlawful acts as described in this complaint.").)

Based on these insufficiently plead allegations, Plaintiff proposes to include two further sets of individuals in his Class Definition, including those individuals: (1) that were "[s]ubjected to an unreasonable amount of phone calls in connection with the collection of the debts owed to Ally Financial"; and (2) that "[r]eceived a bill from Ally Financial that included charges for some unidentified reason, such as 'Miscellaneous,' 'Other Charges' or some similar language." (*Id*. ¶ 112.)

In addition to failing to state a plausible claim for relief, these Counts also fail to satisfy the commonality and typicality requirements of Rule 23(a) because they require an individualized

9

inquiry that is specific to each proposed class member. Plaintiff's claims based on purportedly harassing, or an unreasonable volume, of phone calls require individualized inquiries to determine the claims and defenses of the parties based on, but not limited to, analyzing: (1) the volume of calls; (2) the nature of calls; (3) whether Plaintiff initiated and/or requested return calls; (4) the reason for placing calls; and (5) whether and under what terms the calls were authorized and/or consented to.

Further, while Plaintiff does not provide any factual support for his claims that Ally caused a probability of confusion based on charges purportedly labeled as "Miscellaneous" or "Other Charges," these claims too necessarily require an individualized inquiry that is specific to each proposed class member. The individualized inquiry would include, among other inquiries: (1) the reason for the purported charge; (2) whether Plaintiff was aware of the reason for the purported charge; and (3) and additional communication, either oral or written, regarding the purported charge.

Additionally, Plaintiff's conspiracy allegations do not raise claims on behalf of the proposed class and allege allegations related to Plaintiff only. (*See, e.g. id*. ¶ 100 ("In this agreement, Defendants agreed and combined to engage in a conspiracy in the following manner: (1) To trespass onto Plaintiff's property in order to effectuate the illegal repossession of his vehicle and/or (2) to fraudulent induce Plaintiff into signing a waiver of his legal rights (the Waiver) by threating to keep his vehicle even though Plaintiff had already paid the full redemption price.").) Plaintiff's conspiracy allegations set forth allegations specific only to Plaintiff and, therefore, are inappropriately plead as class allegations.

Therefore, it is clear Plaintiff's factually unsupported class claims, based on the purported conduct of Ally, necessarily involve an individualized inquiry that is specific to each proposed

10
Case 3:19-cv-00189-FDW-DCK   Document 18-1   Filed 07/22/19   Page 10 of 14

class member. As a determination of claims and defenses would necessarily involve an individualized inquiry for each potential class member, Plaintiff's class claims fail as a matter of law and Ally's Motion should be granted.

## II. AN INHERENT CONFLICT EXISTS BETWEEN PLAINTIFF PROPOSED DUAL ROLE AS CLASS REPRESENTATIVE AND LEAD CLASS COUNSEL AND PLAINTIFF IS AN INADEQUATE SELECTION AS LEAD CLASS COUNSEL.

While Plaintiff's class claims are wholly inappropriate because they are based on individualized events, specific only to Plaintiff, they are also inappropriate because of the inherent conflict that exists between Plaintiff's two proposed roles as both class representative and lead class counsel. Further, Plaintiff is an inappropriate selection to serve as lead class counsel because his license to practice law has been suspended in Michigan and he is presently involved in litigation regarding his law license with the North Carolina State Bar, due to a felony conviction in California. For these additional reasons, Ally's Motion should be granted, and the Court should strike Plaintiff's class allegations.

### A. An Inherent Conflict Exists Between Plaintiff's Dually Proposed Roles.

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Trull v. Dayco Prods, LLC*, 214 F.R.D. 394, 402 (W.D.N.C. 2003) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997)). "[T]he named representative(s) must have both a desire to pursue the action vigorously and no substantial conflicts with the proposed class members." *See Audio-Video World of Wilmington*, 2010 U.S. Dist. LEXIS 142156, at *23. "To that end, 'a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'" *Id.* (citing *Gunnells v. Healthplan Servs.*, Inc., 348 F.3d 417, 425 (4th Cir. 2003)).

Ally previously set forth why Plaintiff does not "possess the same interest and [did not] suffer the same injury as the class members" due to the individualized nature of his allegations.

However, Plaintiff is also not an adequate class representative due to his proposed roles as both class representative and lead class counsel. *See Zylstra v. Safeway Stores, Inc.*, 578 F.2d 102, 104 (5th Cir. 1978) ("An attorney whose fees will depend upon the outcome of the case and who is also a class member or closely related to a class member cannot serve the interests of the class with the same unswerving devotion as an attorney who has no interest other than representing the class members.")

As lead Plaintiff, part of Plaintiff's role is to hold class counsel accountable. Plaintiff serving in both roles necessarily creates conflict as he would be tasked with holding himself accountable – the metaphorical wolf minding the hen house. Further, Plaintiff's incentive as lead class counsel is to maximize his award. This creates a further "wolf minding the hen house" conflict as the class members' primary interest is in maximizing their award, from which lead counsel's attorneys' fees and costs would be paid if successful. *See Domonoske v. Bank of Am., N.A.*, Civil Action No. 5:08cv066, 2010 U.S. Dist. LEXIS 7242, at *58 (W.D. Va. Jan. 27, 2010) ("In [common fund] situations, every additional dollar given to class counsel means one less dollar for the class, regardless how a total settlement package is formally structured.").

The inherent conflict between Plaintiff's dually proposed roles as lead Plaintiff and class counsel make Plaintiff inadequate to serve as lead Plaintiff. Therefore, Ally's Motion should be granted, and the Court should strike Plaintiff's class allegations.

### B. Plaintiff Should be Disqualified as Lead Class Counsel.

Plaintiff is an inappropriate selection to serve, and should be disqualified, as lead class counsel because his license to practice law has been suspended in Michigan and he is presently involved in litigation regarding his law license with the North Carolina State Bar, due to a felony conviction in California.

On October 19, 2018, Plaintiff was found guilty of felony violation of 49 U.S.C. §§ 46314(a), (b)(2) in the Central District of California. *See USA v. Flint*, Case No.: 2:17-cr-00697-SJO-1 (C.D. Cal.). Plaintiff's Sentencing Hearing is scheduled for September 16, 2019, and the Government has recommended a 14-month sentence, followed by a 3-year supervised release. *See* Sentencing Memorandum, Dkt. 154, *USA v. Flint*, Case No.: 2:17-cr-00697-SJO-1 (C.D. Cal.).

Based on Plaintiff's felony conviction, the State of Michigan's Attorney Discipline Board issued its Notice of Automatic Interim Suspension on November 1, 2018, suspending Plaintiff's license to practice law in Michigan, effective on the date of his felony conviction. *See* Notice of Automatic Interim Suspension, attached hereto as **Exhibit B**. The Attorney Discipline Board notes it will assign the matter for further hearing upon the filing of a certified judgment of conviction. *Id*.

Also related to Plaintiff's felony conviction, Plaintiff filed his First Amended Verified Complaint, Petition for Temporary Restraining Order, and Motion for Preliminary Injunction against the North Carolina State Bar, the North Carolina Disciplinary Hearing Commission, and Margaret T. Cloutier, Deputy Counsel for the North Carolina State Bar. *See Flint v. North Carolina State Bar, et al.*, Case No. 19-CVS-6015 (Mecklenburg County Superior Court), attached hereto as **Exhibit C**. In this complaint, Plaintiff, *inter alia*, seeks a Temporary Restraining Order and Preliminary Injunction against the defendants preventing them from seeking an order of interim suspension of his law license prior to entry of a certified conviction. *Id*., Request for Relief, ¶ 4. Plaintiff notes the North Carolina State Bar filed a motion for interim suspension on March 1, 2019. *Id*., ¶ 15.

Based on Plaintiff's felony conviction and subsequent suspension of, and litigation over, his law licenses, Plaintiff should be disqualified from serving as lead class counsel.

## CONCLUSION

For the foregoing reasons, Ally Financial Inc. respectfully requests that the Court grant this Motion to Strike Class Allegations, strike the Complaint's class allegations, and grant Ally Financial Inc. such other and further relief as may be appropriate.

## WORD COUNT CERTIFICATION

Pursuant to this Court's Initial Scheduling Order, the undersigned hereby certifies that the word count for this Memorandum in Support, not including the caption, signature block, and this certification is 4,054 words.

Dated: July 22, 2019

Respectfully submitted,

**ALLY FINANCIAL INC.**

By: */s/ Keaton C. Stoneking*
Keaton C. Stoneking
North Carolina Bar No. 53627
TROUTMAN SANDERS LLP
301 S. College Street, 34th Floor
Charlotte, NC 28202
Tel: (704) 998-4088
E-mail: Keaton.stoneking@troutman.com
*Counsel for Defendant Ally Financial Inc.*