UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:19-cv-00189-FDW-DCK

| | | |
|---|---|---|
| DANIEL C. FLINT, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | ORDER |
| vs. | ) ) | |
| ALLY FINANCIAL INC., et. al., | ) ) | |
| Defendants. | ) ) | |

THIS MATTER is before the Court on several motions: (1) Defendant Ally Financial, Inc.'s Motion to Dismiss (Doc. No. 17); (2) Defendant Ally Financial Inc.'s Motion to Strike Class Allegations (Doc. No. 18), to which Defendant UAR National Services, LLC's joined (Doc. No. 22; (3) Defendant Associate Asset Recovery, LLC's Motion to Strike Class Allegations (Doc. No. 24); (4) Plaintiff's "Motion to Strike Motion to Strike Class Allegations" (Doc. No. 30); (5) Defendant UAR National Services' Partial Motion to Dismiss and Partial Motion for Judgment on the Pleadings (Doc. No. 20); and (6) Defendant Associates Asset Recovery's Motion to Dismiss and Motion for Judgment on the Pleadings (Doc. No. 32). These motions are now ripe. For the following reasons, the Court GRANTS Defendants' Motions to Strike Class Allegations, DENIES AS MOOT Plaintiff's Motion to Strike, GRANTS IN PART the Motions to Dismiss and Motions for Judgment on the Pleadings, and DISMISSES WITHOUT PREJUDICE in part the Motions to Dismiss and Motions for Judgment on the Pleadings.

1

**BACKGROUND**

Plaintiff filed the instant action on behalf of himself, as well as those similarly situated, based on the alleged wrongful repossession of his vehicle and the redemption that followed. Taking the allegations in Plaintiff's Amended Complaint (Doc. No. 3) in the light most favorable to him, he contends that on or about August 11, 2018, an employee of either Defendant UAR or AAR entered Plaintiff's "private, gated parking garage" and repossessed the vehicle he had purchased based on a financing agreement with Ally Financial. (Doc. No. 3, p. 3). On or about August 13, 2018, Plaintiff called Ally Financial, which informed him that the redemption price to recover the vehicle would be $3,127.39. That same day, Plaintiff contends he paid Ally Financial the full $3,127.39 redemption price in order to redeem the vehicle. Once Ally was paid, it directed him to pick up the vehicle from AAR at 6500 Lakeview Road, Charlotte, NC 28269. When Plaintiff arrived at AAR he was given a number of documents to sign, including a document that stated: "By signing this Release, I fully understand the above statements and do agree to Release and Hold Harmless Associates Asset Recovery LLC and Ally Financial and or its Agents from all claims, demands and or actions, which I or my Representatives do have or may have against Associates Asset Recovery LLD, Ally Financial and/or its Agents or Employees, prior to this date" (the "Waiver"). (Doc. No. 3, p. 4). Plaintiff contends that at no point prior to making the $3,127.39 payment was he informed that he would be required to sign a release and hold harmless clause. Plaintiff also contends he verbally objected to signing the Waiver, but that AAR refused to release the vehicle until Plaintiff signed all the documents, including the Waiver. Plaintiff also alleges he informed the AAR representative that the full redemption price had been paid and Ally Financial had already faxed AAR the paperwork required to release the vehicle. According to Plaintiff,

AAR then told Plaintiff the only way they could release the vehicle was if he agreed to sign the Waiver. (Doc. No. 3, p. 5).

In his Amended Complaint, Plaintiff asserts fifteen causes of action against Defendants Ally, UAR, and AAR. Counts 1 through 5 of Plaintiff's Complaint assert individual claims, and Counts 6 through 15 assert claims on behalf of Plaintiff individually, as well as on behalf of a class. Plaintiff's individual Counts include: (1) Violation of N.C. Gen. Stat. § 25-9-609; (2) Trespass to Real Property; (3) Trespass to Personal Property; (4) Conversion; and (5) Negligence Per Se. Plaintiff's individual and class Counts include: (6) Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing; (7) Unfair and Deceptive Acts and Practices; (8) Fraudulent Inducement; (9) Fraudulent Misrepresentation; (10) Negligent Misrepresentation; (11) Violation of N.C. Gen. Stat. §§ 75-50, et seq.; (12)Violation of Federal Fair Debt Collection Practices Act; (13) Negligence Per Se; (14) Breach of Quasi Contract; and (15) Conspiracy. For these claims on behalf of "others similarly situated," Plaintiff proposes a class defined as:

> All persons or throughout the United States and its territories who, during the class period, entered into a secured agreement with Ally Financial and were either:
> a. Required to waive their legal rights in order to redeem their repossessed vehicle, despite paying the redemption price in full;
> b. Subjected to an unreasonable amount of phone calls in connection with the collection of the debt owed to Ally Financial; or
> c. Received a bill from Ally Financial that included charges for some unidentified reason, such as "Miscellaneous," "Other Charges" or some similar language.

(Doc. No. 3, p. 19). Persons excluded from this proposed class include:

> a. State consumer protection claims held by;
>> i. persons in states whose state consumer protection act forbid an individual from bringing an action under said act on behalf of a class.

ii. persons other than "consumers," in states whose statutes are limited to consumers who purchase for personal, family or household purposes.

b. persons whose claims would be barred under applicable state statute of limitations or repose provisions that, unless otherwise tolled, limit the time period with which the claim can be brought.

c. persons who, prior to the filing of this complaint or prior to final judgment herein have filed separate legal actions against Defendants, asserting similar claims;

d. all Defendants and their subsidiaries, affiliates, officers and directors;

e. any entity in which a Defendant or any other excluded entity has a controlling interest;

f. any judge or judicial official assigned to this matter and his or her immediate family;

g. the Court in which this case is assigned, its staff, and Plaintiff's counsel and co-counsel; and

h. the legal representatives, successors or assigns of any such excluded persons or entities.

(Doc. No. 3, pp. 20-21). All Defendants have moved to strike the class allegations and dismiss the complaint (in part or in whole), and Defendants UAR and AAR also move for judgment on the pleadings. The Court addresses these motions in turn.

## MOTIONS TO STRIKE CLASS ALLEGATIONS

A. Applicable Law

Defendants move to strike Plaintiff's class complaints from the Amended Complaint because: 1) it does not satisfy the requirements under Fed. R. Civ. P. 23(a) of numerosity, commonality, typicality, and/or adequate representation because the class claims necessarily involve individualized inquiries of fact; 2) an inherent conflict exists between Plaintiff's proposed dual role as Plaintiff and lead counsel for the class; and 3) if the class claims are allowed to proceed, Plaintiff should be disqualified as lead class counsel due to his felony conviction in California that has led to suspension of his Michigan law license and litigation regarding his North Carolina law license. Notably, Plaintiff's "response" to the motions to strike only seeks to "strike" portions of

Defendants' motions related to the second and third arguments for dismissal.[1]  Neither his motion to strike nor any other pleading filed in response to Defendants' Motions to Strike address the merits of the Rule 23 arguments.  As explained below, the Court finds the Rule 23(a) analysis to be dispositive and need not address the second and third arguments.

In order to certify a class Under Rules 23(a), Plaintiff must be able to show:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Defendants' instant motions challenge Plaintiff's ability to satisfy these requirements, and they move to strike the class allegations in Plaintiff's Amended Complaint pursuant to Federal Rules of Civil Procedure Rules 23(c)(1) and 23(d)(1)(D).[2]

---

[1] Plaintiff provides no argument in opposition to Defendants' arguments and authority.  Notably, Plaintiff did not file a direct response to the Motions to Strike Class Allegations, but instead filed a pleading captioned as a "Response to Defendant's Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6)" that notes in the opening paragraph:

> Plaintiff respectfully moves this Court for an Order striking Defendant Ally Financial's Motion to Strike Class Allegations [Dkt. No. 18], Defendant UAR National Services, LLC's Motion to Strike Class Allegations [Dkt. No. 22], Associates Asset Recovery, LLC's Motion to Strike Class Allegations [Dkt. No. 24], and all reference to a pending California District Court matter involving Plaintiff (collectively "Defendants' motions").

(Doc. No. 30, p. 1).  The gravamen of Plaintiff's pleading hinges on striking Defendant's reference to his ability to serve as lead class counsel based on his felony conviction in California that resulted in his loss of law license in Michigan and other disciplinary proceedings in North Carolina. In addition to the brief argument made related to the felony conviction, Plaintiff attached a lengthy legal document he had filed prior to sentencing in that criminal matter before the California federal court.

As discussed herein, Plaintiff's pleading is void of any argument as to how he satisfies the requirements of Rule 23, void of any authority in response to Defendants' motions tending to show he can satisfy such requirements, and void of any argument tending to show Plaintiff can overcome the individualized issues he attempts to assert on behalf of a "class." Thus, the Court is left only with the Amended Complaint's "allegations" and legal conclusions found on pages 18 through 24.  (Doc. No. 3).

[2] Rule 23(c)(1) provides:
> (c) Certification Order; Notice to Class Members; Judgment; Issues Classes; Subclasses.
>> (1) Certification Order.

In light of the early posture of this case, the Court first recognizes the decision as to whether to certify a class is preferably decided after some discovery.

> A party seeking class certification must do more than plead compliance with the aforementioned Rule 23 requirements. See [Wal–Mart v. Dukes, 131 S.Ct. 2541, 2551 (2011)] ("Rule 23 does not set forth a mere pleading standard."). Rather, the party must present evidence that the putative class complies with Rule 23. See Comcast Corp. v. Behrend, ––– U.S. –––, 133 S.Ct. 1426, 1432, 185 L.Ed.2d 515 (2013).

> To determine whether the party seeking certification has carried its burden, a district court may need to "probe behind the pleadings before coming to rest on the certification question." Id. (internal quotation marks omitted). Although Rule 23 does not give district courts a "license to engage in free-ranging merits inquiries at the certification stage," a court should consider merits questions to the extent "that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." Amgen Inc. v. Conn. Ret. Plans & Trust Funds, ––– U.S. –––, 133 S.Ct. 1184, 1194–95, 185 L.Ed.2d 308 (2013).

> It is the plaintiff's burden to demonstrate compliance with Rule 23, but the district court has an independent obligation to perform a "rigorous analysis" to ensure that all of the prerequisites have been satisfied. See Wal–Mart, 131 S.Ct. at, 2551.

EQT Prod. Co. v. Adair, 764 F.3d 347, 357–58 (4th Cir. 2014). Here, however, Plaintiff has neither objected to the timing of Defendants' motion nor has he provided *any* argument or forecast an evidentiary basis beyond the Amended Complaint to allow the Court to "probe behind the pleadings" in deciding the certification question. Moreover, the Court finds the current record permits the Court to conduct a rigorous analysis under Rule 23, such that a decision is not premature, particularly where Plaintiff's Amended Complaint, (Doc. No. 3, pp. 21-24), purports

---

(A) Time to Issue. At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action.

Fed. R. Civ. P. 23. Rule 23(d)(1)(D) provides that as part of managing a case asserting class claims, the Court can issue an order directing the complaint be amended to remove allegations related to the representation of absent persons. Id.

to explain how his allegations satisfy the Rule 23(a) requirements.  See <u>Gariety v. Grant Thornton,</u> <u>LLP</u>, 368 F.3d 356, 365 (4th Cir. 2004) ("If it were appropriate for a court simply to accept the allegations of a complaint at face value in making class action findings, every complaint asserting the requirements of Rule 23(a) and (b) would automatically lead to a certification order, frustrating the district court's responsibilities for taking a close look at relevant matters, for conducting a rigorous analysis" of such matters, and for making findings that the requirements of Rule 23 have been satisfied. Moreover, if courts could only consider the pleadings, then parties would have wide latitude to inject frivolous issues to bolster or undermine a finding of predominance." (citations omitted)).  Based on the record before the Court, the Court finds this to the unusual case where the allegations in the Amended Complaint make clear this issue is ripe for decision at this early juncture.[3]

---

[3] Additionally, the Court finds a case from the Sixth Circuit Court of Appeals instructive:

> That the motion to strike came before the plaintiffs had filed a motion to certify the class does not by itself make the court's decision reversibly premature. Rule 23(c)(1)(A) says that the district court should decide whether to certify a class "[a]t an early practicable time" in the litigation, and nothing in the rules says that the court must await a motion by the plaintiffs. As a result, "[e]ither plaintiff or defendant may move for a determination of whether the action may be certified under Rule 23(c)(1)." 7AA Charles Allen Wright et al., <u>Federal Practice and Procedure</u> § 1785; <u>see also, e.g.,</u> <u>Vinole v. Countrywide Home Loans, Inc.</u>, 571 F.3d 935, 941–44 (9th Cir.2009); <u>Cook County</u> <u>College Teachers Union, Local 1600 v. Byrd</u>, 456 F.2d 882, 884–85 (7th Cir.1972).

> To say that a defendant may freely move for resolution of the class-certification question whenever it wishes does not free the district court from the duty of engaging in a "rigorous analysis" of the question, and "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." <u>Gen. Tel. Co. v. Falcon</u>, 457 U.S. 147, 161, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). The problem for the plaintiffs is that we cannot see how discovery or for that matter more time would have helped them. To this day, they do not explain what type of discovery or what type of factual development would alter the central defect in this class claim. The key reality remains: Their claims are governed by different States' laws, a largely legal determination, and no proffered or potential factual development offers any hope of altering that conclusion, one that generally will preclude class certification.

<u>Pilgrim v. Universal Health Card, LLC</u>, 660 F.3d 943, 949 (6th Cir. 2011).

B.  Analysis

Turning to Defendants' arguments, the motions contend it is evident from the allegations in the Amended Complaint that Plaintiff cannot certify his proposed class because individualized issues predominate the purported claims such that neither Rule 23(a)(2) nor Rule 23(a)(3) can be satisfied.  The Fourth Circuit has recognized:

> A class cannot be certified unless a court can readily identify the class members in reference to objective criteria.
>
> The plaintiffs need not be able to identify every class member at the time of certification. But if class members are impossible to identify without extensive and individualized fact-finding or "mini-trials," then a class action is inappropriate.

EQT Prod. Co. v. Adair, 764 F.3d 347, 358 (4th Cir. 2014) (citations and quotations omitted).

Further:

> "Commonality requires that there are questions of law or fact common to the class." [Lienhart v. Dryvit Sys., Inc., 255 F.3d 138, 146 (4th Cir.2001)] (internal quotation marks omitted). A common question is one that can be resolved for each class member in a single hearing, such as the question of whether an employer engaged in a pattern and practice of unlawful discrimination against a class of its employees. See 7A Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1763 (3d ed.2005). A question is not common, by contrast, if its resolution "turns on a consideration of the individual circumstances of each class member." See id.

As mentioned above, Plaintiff has failed to present any argument or authority beyond his Amended Complaint in opposition to Defendants' motions to strike allegations.  In other words, nothing – beyond the Amended Complaint – exists before the Court in opposition to Defendants' arguments that the claims here rely on individualized inquiry and require consideration of a "myriad of each plaintiff's situation" to defeat commonality and typicality. Rose v. SLM Fin. Corp., 254 F.R.D. 269, 272 (W.D.N.C. 2008) ("'A question is not common, . . . if its resolution turns on consideration of the individual circumstances of each class member.") (quoting Thorn v.

Jefferson-Pilot Life Ins. Co., 445 F.3d 311, 319 (4th Cir. 2006)).  Based on the record before the Court, the Court finds that Plaintiff's claims hinge on personal interactions and conversations at the time of redemption, including representations as to whether a waiver "must" be signed and whether the party objected to signing the waiver prior to execution.  For example, Count 6 alleges Defendants breached the covenant of good faith and fair dealing because:

> 45.  . . .  refusing to release Mr. Flint's vehicle unless he agreed to release them from all liability, even though he had paid the redemption price in full.

> 46. . . . failing to disclose to Plaintiff and the proposed class that they would be required to sign a release and hold harmless clause before their vehicle would be released, even though the redemption price had been paid in full.

(Doc. No. 3, p. 8).  Plaintiff adds, "47. Plaintiff and the proposed class members have performed all, or substantially all, of the obligations imposed on them under their agreement with Defendants."  Id.  Each of these three allegations requires a fact-based inquiry into individual transactions to determine whether a redemption price had been paid in full, inquiry into specific communications as to whether any refusal to release took place or whether any failure to disclose occurred, and individualized inquiry as to whether a purported class member had performed "all, or substantially all of the obligations imposed on them . . . ."  The next count, Count 7, further exemplifies the individualized inquiry central to Plaintiff's allegations as he contends the Defendants' policies and practices are misleading, deceptive, unfair, false and fraudulent based on Defendants' actions of:

> e.     Refusing to release a consumer's repossessed vehicle unless the consumer agreed to release Defendants from all liability, even though the consumer had already paid the redemption price in full;

> f.     Failing to disclose to the consumer that they would be required to sign a release and hold harmless clause before their vehicle would be released, even though the consumer had already paid the redemption price in full;

g.      Continuing to harass the consumer by calling the consumer's phone an unreasonable number of times every day;

h.      Causing a probability of confusion or of misunderstanding as to the legal rights of the consumer; and

i.      Charging additional fees on the consumer's bill and listing them as "Miscellaneous" – i.e. failing to identify why the consumer is being charged these additional fees.

Id. at p. 11.  The other claims mirror such necessary individualized inquiry.  Id. at pp. 11-25 (including by not limited to ¶¶ 59, 60 (Count 8); 66-68 (Count 9); 72, 73, 76, 77 (Count 10); 82-85 (Count 11); 88-89 (Count 12); 93 (Count 13); 96-97 (Count 14); and 100 (Count 15)).  Because this inevitably requires an individualized assessment of facts, including credibility of witnesses, for each purported class member, certification under Rule 23 is not appropriate. The Court therefore GRANTS Defendant's Motions to Strike the class allegations in the Amended Complaint.

In light of Plaintiff's inability to satisfy Rule 23(a)'s requirements of typicality and commonality, the Court need not address Defendants' other arguments related to Plaintiff's role as a class representative and lead class counsel.  Accordingly, Plaintiff's Motion to Strike is DENIED AS MOOT.

C.  Subject Matter Jurisdiction

Plaintiff's Amended Complaint asserts subject matter jurisdiction in this Court based only on the Class Action Fairness Act, 28 U.S.C. § 1332(d).  See 28 U.S.C. § 1332(d)(2)(A) (providing that "[t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which–(A) any member of a class of plaintiffs is a citizen of a State different from any

defendant").  Because the Court strikes those portions of Plaintiff's claims seeking to proceed as

a class action at this early juncture, the Court must consider, *sua sponte*, whether it retains subject

matter jurisdiction over the case on another basis.

> "[A] federal court is obliged to dismiss a case whenever it appears the court lacks
> subject matter jurisdiction." Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir. 1999).
> "[T]he absence of jurisdiction may be raised at any time during the case, and may
> be based on the court's review of the evidence." Id.; see Gibbs v. Buck, 307 U.S.
> 66, 72, 59 S.Ct. 725, 83 L.Ed. 1111 (1939). "Determining the question of subject
> matter jurisdiction at the outset of the litigation is often the most efficient
> procedure." Lovern, 190 F.3d at 654. The "district court may address its lack of
> subject matter jurisdiction in two ways." Id. It "may find insufficient allegations in
> the pleadings, viewing the alleged facts in the light most favorable to the plaintiff,
> similar to an evaluation pursuant to Rule 12(b)(6)," or, "after an evidentiary
> hearing, the court may weigh the evidence in determining whether the facts support
> the jurisdictional allegations." Id. (internal citations omitted); see Adams v. Bain,
> 697 F.2d 1213, 1219 (4th Cir. 1982) (same).

Martinez v. Duke Energy Corp., 130 F. App'x 629, 634 (4th Cir. 2005).

Here, Plaintiff's Amended Complaint is void of any other assertion of jurisdiction beyond

that under CAFA.  There is no allegation that the amount in controversy for Plaintiff's individual

claims exceeds $75,000 sufficient to indicate diversity jurisdiction under 28 U.S.C.A. § 1332.  In

fact, Plaintiff's allegations concede, "When considered on an individual basis, the damages

resulting from Defendants' unfair and deceptive business practices are relatively low.

Consequently, it is highly unlikely any individual claimant (and even less likely that an attorney)

would spend the time, money and effort necessary to challenge the alleged conduct."  (Doc. No.

3, p. 24).

Federal question jurisdiction arises only from "those cases in which a well-pleaded

complaint establishes either that federal law creates the cause of action or that the plaintiff's right

to relief necessarily depends on resolution of a substantial question of federal law."  Franchise Tax

Bd. of the State of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 27–28 (1983). Here, only one of Plaintiff's fifteen claims purports to set forth a federal question – the claim under the Fair Debt Collection Practices Act. If this claim is not properly before the Court, the Court lacks federal question jurisdiction and can decline to exercise supplemental jurisdiction over Plaintiff's fourteen other claims. See 28 U.S.C. § 1367(c)(3); see also Yarborough v. Burger King Corp., 406 F.Supp.2d 605, 609 (M.D.N.C. 2005); Gen. Textile Printing & Processing Corp. v. City of Rocky Mount, 908 F.Supp. 1295, 1312 (E.D.N.C.1995).

## MOTIONS TO DISMISS

A.  Applicable Law

Defendants move to dismiss based on Federal Rules of Civil Procedure 12(b)(6) for Plaintiff's failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation and internal quotations omitted). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. An inference of the mere possibility of misconduct is not sufficient to support a plausible claim. Id. at 679. Courts must "accept the well-pled allegations of the complaint as true, ... constru[ing] the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). "A pleading that offers 'labels and conclusions' or ... 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. Iqbal, 556 U.S. at 678 (alteration in original)

(citation and quotation omitted)). Courts need not accept legal conclusions couched as factual allegations. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

In addition to moving for dismissal under Rule 12(b)(6), Defendants AAR and UAR also contend Rule 12(c) supports judgment on the pleadings in their favor. It is well-settled, "In addressing a Rule 12(c) motion, the Court may consider the Answer and attached exhibits in addition to the Complaint. The Answer's factual allegations are taken as true to the extent they do not contradict the factual allegations in the Complaint." Seneca Ins. Co. v. Shipping Boxes I, LLC, 30 F. Supp. 3d 506, 510 (E.D. Va. 2014) (citing Mendenhall v. Hanesbrands, Inc., 856 F.Supp.2d 717, 724 (M.D.N.C. 2012)).

Notably, appellate review for motions to dismiss under 12(b)(6) and 12(c) is the same, so the Court sees no need to separate the analysis here. See W.C. & A.N. Miller Dev. Co. v. Cont'l Cas. Co., 814 F.3d 171, 175–76 (4th Cir. 2016) ("We review de novo the district court's ruling on a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), and in doing so, apply the standard for a Rule 12(b)(6) motion." (citing Butler v. United States, 702 F.3d 749, 751–52 (4th Cir. 2012)).

> [A] motion for judgment on the pleadings "should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999). A Rule 12(c) motion tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact.

Drager v. PLIVA USA, Inc., 741 F.3d 470, 474 (4th Cir. 2014). Bearing these principles in mind, the Court turns to the parties' motions to dismiss the Amended Complaint, beginning with the sole federal claim – Count 12 – which asserts violations of the Fair Debt Collection Practices Act.

B. Analysis

Plaintiff contends Ally Bank violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, ("FDCPA") by "causing Plaintiff and the proposed classes' telephone to ring repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number" and that the other "Defendants" violated the FDCPA by "falsely stating that Plaintiff and the proposed class was required to sign a waiver of their legal rights without disclosing the nature and consequences of such affirmation or waiver and the fact that they were not legally obligated to make such affirmation or waiver." (Doc. No. 3, p. 15).

To state a claim under the FDCPA, a plaintiff must plausibly allege the defendants: (1) were the object of collection activity arising from consumer debt as defined in the FDCPA; (2) are "debt collectors" as defined in the FCDPA; and (3) engaged in an act or omission prohibited by the FDCPA. See, e.g., Boosahda v. Providence Dane LLC, 462 Fed.Appx. 331, 333 n. 3 (4th Cir.2012) (per curiam) (unpublished); Salley v. Bank of Am., N.A., No. 5:13–CV–753–D, 2014 WL 2768660, at *4 (E.D.N.C. June 18, 2014) (unpublished).

The FDCPA is designed to protect individuals from a third-party "debt collector," which is problematic for Plaintiff's claims here. This term is important, as the Fourth Circuit has explained:

> [T]he FDCPA purports to regulate only the conduct of debt collectors, not creditors, generally distinguishing between the two based on whether the person acts in an agency relationship with the person to whom the borrower is indebted. With limited exceptions, a debt collector thus collects debt on behalf of a creditor. A creditor, on the other hand, is a person to whom the debt is owed, and when a creditor collects its debt for its own account, it is not generally acting as a debt collector.

Henson v. Santander Consumer USA, Inc., 817 F.3d 131, 135–36 (4th Cir. 2016), aff'd, 137 S. Ct. 1718, 198 L. Ed. 2d 177 (2017). The court further explained that "[t]he material distinction between a debt collector and a creditor—at least with respect to the second definition of 'debt collector' provided by § 1692a(6)—is therefore whether a person's regular collection activity is only for itself (a creditor) or whether it regularly collects for others (a debt collector)." Id. at 136-37. In other words, section 1692 does not apply to creditors attempting to collect a debt actually owed to them.

To the extent Plaintiff asserts a violation of the FDCPA against Ally Bank, it is barred as Ally Bank was a creditor acting to collect a debt owed to it. In other words, the FDCPA is not applicable to Ally Bank under these facts, and Plaintiff's claims under the FDCPA against Ally Bank fail as a matter of law. See id., Proctor v. Ally Fin. Inc., No. CV PJM 18-2989, 2019 WL 3539929, at *3 (D. Md. Aug. 2, 2019) ("Ally is therefore a creditor, not a debt collector, within the meaning of the FDCPA, since it is collecting debts on its own behalf rather than for others."); see also Smallwood v. Irwin Mortg. Co., No. 5:12-CV-47-BO, 2013 WL 4735877, at *3 (E.D.N.C. Sept. 3, 2013) (dismissing FDCPA claim pursuant to Federal Rule Civil Procedure 12(b)(6)); see also Brooks-McCollum v. Aspen Prop. Mgmt. Co., 551 F. App'x 677, 679–80 (4th Cir. 2014) (affirming dismissal for failure to state a claim because the defendants are not debt collectors under the FDCPA) (citing 15 U.S.C. § 1692a(4), (6)(A) and 15 U.S.C. § 1692a(6)(F)(iii)). Dismissal of this claim against Ally Bank is appropriate.

Turning to the allegations against UAR and AAR, Plaintiff alleges a violation of "15 USC 1692 Section 807" when they falsely required him to sign a waiver without "disclosing the nature or consequences" of the waiver or the fact he was not legally required to sign a waiver. (Doc. No.

3, p. 15).  The Court construes Plaintiff's reference to "15 USC 1692 Section 807" to mean 15 U.S.C. § 1692e, which is entitled "False or misleading representations," as "Section 807" refers to the Fair Debt Collection Practices act section number, while 15 U.S.C. § 1692e is the codified statute.  Since Plaintiff's allegations under the FDCPA only relate to the Waiver, the Court considers the Waiver as it was attached to Defendant AAR Answer.  (Doc. No. 29-2).

In order for 15 U.S.C. §1692e to apply, UAR and AAR must be a "debt collector" as that term is defined under the FDCPA.  In examining this question, the Supreme Court recently clarified the scope of this definition in Obduskey v. McCarthy & Holthus LLP, 139 S. Ct. 1029 (2019).  In that case, the Court recognized the statutory definition of "debt collector" does *not* include "entities engaged in no more than the 'enforcement of security interests' through methods such as foreclosure and repossession.  Id. at 1040.  Here, all of Plaintiff's allegations against UAR and AAR revolve around their repossession of his vehicle on behalf of Ally Bank.  Thus, to the extent Plaintiff attempts to assert claims under 15 U.S.C. §1692e, such claims are not appropriate against UAR and AAR as they are not a "debt collector" for purposes of that statute.

The Supreme Court, however, cautioned that its holding need not be interpreted as giving entities like AAR and UAR "a license to engage in abusive debt collection practices" because "enforcing a security interest does not grant an actor blanket immunity from the [FDCPA]." Obduskey, 139 S. Ct. at 1039–40.  The Court intentionally left open "what other conduct (related to, but not required for, enforcement of a security interest) might transform a security-interest enforcer into a debt collector subject to the main coverage of the [FDCPA]."  Id. at 1040 (emphasis removed).  With the question being left open, some district courts have looked to whether entities engaged in conduct beyond what is needed for security-interest enforcement.  See Carlson v.

<u>Patrick K. Willis Co., Inc.</u>, No. 19-CV-181-JDP, 2019 WL 6118902, at *3 (W.D. Wis. Nov. 18, 2019) (granting dismissal because plaintiff failed to plead facts that, if true, would show that defendants were engaging in conduct unnecessary for repossession of his truck, and noting that instead, the complaint and the incorporated documents show that the defendants' conduct was only aimed at repossession, not debt collection); <u>Oya v. Wells Fargo Bank, N.A.</u>, No. 3:18-CV-01999-H-BGS, 2019 WL 4573704, at *7 (S.D. Cal. Sept. 19, 2019) (holding that plaintiffs did not sufficiently allege that the defendants acted contrary to their rights to enforce their security interest and have not sufficiently alleged that the defendant did not have a present right to possession of the property claimed as collateral through an enforceable security interest); <u>Goodwin v. His Choice Towing & Recovery LLC</u>, No. 1:17-CV-00753, 2019 WL 7944075, at *3 (N.D. Ga. Dec. 3, 2019) (noting "repossession companies, which enforce debt collectors' or creditors' security interests, may not use "unfair or unconscionable means to collect or attempt to collect any debt" under the FDCPA).

In other words, <u>Obduskey</u> suggests that even if an entity is attempting to enforce a security interest, it might still be a "debt collector" regulated by the FDCPA if it engages in conduct unnecessary for security-interest enforcement—conduct that would suggest that the entity's true purpose is not repossession, but debt collection. Here, Plaintiff's Amended Complaint is void of any facts that would show AAR and UAR were acting as debt collectors, not security-interest enforcers, under the FDCPA's relevant provisions. <u>See</u> <u>Carlson</u>, 2019 WL 6118902, at *3 (dismissing FDCPA claim against repossessing agent for failure to state a claim upon which relief could be granted).

Having concluded that AAR and UAR are not "debt collectors" in the general sense, Obduskey also recognized the statutory framework of the FDCPA expands the definition of when an agency engaged in enforcement of security interests can be considered a debt collector, which is *only* in the limited situation set forth in 15 U.S.C. § 1692a(6): "*For the purpose of section 1692f(6) of this title*, [the term "debt collector"] also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." (Emphasis added). Thus, Plaintiff's FDCPA claims against AAR and UAR can be saved *only if* Plaintiff sufficiently pleads a claim under Section 1692(f)(6). That statute permits recovery under the FDCPA against entities enforcing security interests of others if they engage in:

> (6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if--
>> (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;
>> (B) there is no present intention to take possession of the property; or
>> (C) the property is exempt by law from such dispossession or disablement.

15 U.S.C.A. § 1692f. Of note, this statute is not referenced anywhere in Plaintiff's Amended Complaint.

Here, Plaintiff's FDCPA allegations against "Defendants" (which presumably includes AAR and UAR) relate solely to their alleged statements that he was required to sign the Waiver and their failure to explain to him the consequences of signing it. Notably, no allegation specifically explains UAR's connection to the Waiver. Nevertheless, these broad allegations go to the validity of the Waiver (and its impact on any "damages" Plaintiff might assert to his vehicle or its contents arising out of their repossession), but they fail to assert a claim under 15 U.S.C.A. § 1692f. Plaintiff's assertions regarding "misrepresentations" or omissions related to his signing

of the waiver do not save his claim under FDCPA, particularly where no allegation is made to suggest damage to Plaintiff's vehicle or its contents by the action of repossession.

Moreover, to the extent Plaintiff could rely on a violation of N.C. Gen. Stat. § 25-6-609 in breaching the peace to show "no present right to possession" of his vehicle, the Court finds Plaintiff's Amended Complaint and his opposition to the motions to dismiss have failed to show how AAR and UAR violated that statute sufficient to state a claim for relief under 15 U.S.C. § 1692f(6)(A).[4] See Cooper v. Fulton Bank, N.A., No. CV CCB-16-4138, 2017 WL 5478318, at *3 (D. Md. Nov. 15, 2017) (holding that because the defendants did not breach the peace, they did not lose their present right to possession of the collateral under 15 U.S.C. § 1692f(6)(A)).

In short, the Court finds that as a matter of law, Plaintiff has failed to set forth an FDCPA claim against Defendants Ally Bank, UAR, and AAR upon which relief can be granted. In so ruling, however, the Court expresses no opinion, however, on the validity of the Waiver or its impact on the viability of Plaintiff's fourteen other claims arising under the various state law theories in the Amended Complaint. In light of this Court's ruling, and because all of Plaintiff's numerous other remaining claims arise under state law, the Court declines to exercise supplemental jurisdiction. Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009) ("With respect to

---

[4] The statute provides that if a debtor defaults on his obligations under a security agreement, the secured party is permitted to take possession of the collateral, N.C. Gen. Stat. § 25-9-609(a)(1), so long as no breach of peace occurs. In considering whether a breach of peace occurred, under North Carolina law, courts look to the reasonableness of the time and manner of the repossession by applying a five-factor balancing test of "(1) where the repossession took place, (2) the debtor's express or constructive consent, (3) the reactions of third parties, (4) the type of premises entered, and (5) the creditor's use of deception." Giles v. First Virginia Credit Servs., Inc., 560 S.E.2d 557, 565 (N.C. App. 2002) (citation omitted). Construing all of Plaintiff's allegations as true, his allegations as to this violation fail to sufficiently plead a violation as against AAR or UAR. Noticeably missing is any reference to reactions of third parties or the creditor's use of deception. Moreover, nothing in the Amended Complaint indicates any confrontation with Plaintiff or a member of the public, any deception, any damage to property in repossessing the vehicle, any allegation of forced entry (despite the mention of a mechanical lock that can only be deactivated by a garage door opener), or any other alleged disruption of the public peace. Plaintiff's allegations that his vehicle was repossessed from a gated parking garage, without more, is insufficient to plead facts to show UAR and AAR had "no present right to possession of the property claim as collateral . . . ." 15 U.S.C.A. § 1692f(6)(A).

supplemental jurisdiction in particular, a federal court has subject-matter jurisdiction over specified state-law claims, which it may (or may not) choose to exercise. See §§ 1367(a), (c). A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary. See § 1367(c).").

Instead, the Court will DISMISS the case WITHOUT PREJUDICE to Plaintiff's ability to refile any applicable claims in the appropriate court.

### CONCLUSION

Having carefully considered the pleadings and the parties' arguments, this Court strikes Plaintiff's claims asserted on behalf of any class and grants Defendants' Rule 12(b)(6) motion with respect to the one federal law cause of action asserted in the Amended Complaint. In so ruling, the Court dismisses the two potential avenues over which this court has original jurisdiction, including all allegations on behalf of a class and Count 12. This dismissal is WITHOUT PREJUDICE. The Court declines to exercise supplemental jurisdiction over Plaintiff's numerous other claims, all of which rely on state law, and DISMISSES Counts 1-11 and Counts 13-15 WITHOUT PREJUDICE.

Where jurisdiction "ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Steele Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) (quoting Ex parte McCardle, 19 L. Ed. 264 (1868)). Although pleadings of self-represented litigants must be accorded liberal construction, see Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), liberal construction does not mean a court can ignore a clear failure to allege facts that set forth a basis for federal court jurisdiction, see Weller v. Dep't of Soc. Servs., 901 F.2d 387, 391 (4th Cir. 1990). The Court notes that at the time of filing, Plaintiff was a licensed attorney

in the state of North Carolina and was therefore bound by the appropriate rules governing the practice of law in this jurisdiction.  To the extent Plaintiff's status as a licensed attorney changed during the pendency of these proceedings, the Court notes it has provided him all liberal construction typically afforded to pro se parties.

IT IS THEREFORE ORDERED that Defendants' Motion to Strike Class Allegations Defendant Ally Financial, Inc.'s Motion to Dismiss (Docs. Nos. 18, 22, 24) are GRANTED; Plaintiff's "Motion to Strike Motion to Strike Class Allegations" (Doc. No. 30) is DENIED AS MOOT; and Defendants' Motions to Dismiss and Partial Motion for Judgment on the Pleadings (Docs. Nos. 17, 20, 32) are GRANTED, and the Amended Complaint is DISMISSED WITHOUT PREJUDICE.  The Clerk is respectfully directed to CLOSE THIS CASE.

IT IS SO ORDERED.

Signed: March 27, 2020

Frank D. Whitney
Chief United States District Judge